DEC 20 2023 PM4:04
FILED - USDC - FLMD - ORL

AF Approval __NA____                    Chief Approval __CAB__

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                              CASE NO. 6:23-cr- 239 - RBD - LHP

JAMES MOYE

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, James Moye, and the attorney for the defendant, Joshua

Lukman, mutually agree as follows:

**A.    Particularized Terms**

    1.    Count Pleading To

        The defendant shall enter a plea of guilty to Count One of the

Information.  Count One charges the defendant with mail theft, in violation of

18 U.S.C. § 1708.

    2.    Minimum and Maximum Penalties

Count One is punishable by imprisonment for up to 5 years, a fine of

$250,000, up to 3 years of supervised release, and a special assessment of $100.

Defendant's Initials __JM__

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:      The mail matter described in the Information was in the United States mail, in a mail route, with a letter or mail carrier, or in an authorized depository for mail matter; and

Second:    The defendant knowingly stole the mail.

4.    Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the

Defendant's Initials _____          2

defendant's applicable guidelines range as determined by the Court pursuant

to the United States Sentencing Guidelines, as adjusted by any departure the

United States has agreed to recommend in this plea agreement.  The parties

understand that such a recommendation is not binding on the Court and that,

if it is not accepted by this Court, neither the United States nor the defendant

will be allowed to withdraw from the plea agreement, and the defendant will

not be allowed to withdraw from the plea of guilty.

      7.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse

information is received suggesting such a recommendation to be unwarranted,

the United States will recommend to the Court that the defendant receive a

two-level downward adjustment for acceptance of responsibility, pursuant to

USSG § 3E1.1(a).  The defendant understands that this recommendation or

request is not binding on the Court, and if not accepted by the Court, the

defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level

prior to operation of subsection (a) is level 16 or greater, and if the defendant

complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea

Agreement, including but not limited to, the timely submission of the financial

affidavit referenced in Paragraph B.5., the United States agrees to file a motion

pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

        8.    <u>Cooperation - Responsibilities of Parties</u>

        a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

        b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest

Defendant's Initials _____        4

knowledge, information, and cooperation regarding any of the matters noted

herein, the following conditions shall apply:

        (1)    The defendant may be prosecuted for any perjury or

false declarations, if any, committed while testifying pursuant to this

agreement, or for obstruction of justice.

        (2)    The United States may prosecute the defendant for

the charges which are to be dismissed pursuant to this agreement, if any, and

may either seek reinstatement of or refile such charges and prosecute the

defendant thereon in the event such charges have been dismissed pursuant to

this agreement.  With regard to such charges, if any, which have been

dismissed, the defendant, being fully aware of the nature of all such charges

now pending in the instant case, and being further aware of defendant's rights,

as to all felony charges pending in such cases (those offenses punishable by

imprisonment for a term of over one year), to not be held to answer to said

felony charges unless on a presentment or indictment of a grand jury, and

further being aware that all such felony charges in the instant case have

heretofore properly been returned by the indictment of a grand jury, does

hereby agree to reinstatement of such charges by recision of any order

dismissing them or, alternatively, does hereby waive, in open court,

prosecution by indictment and consents that the United States may proceed by

Defendant's Initials _J          5

information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials __JM__                     6

9.      Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the

Defendant's Initials _J lu_                7

defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete

Defendant's Initials ___J W___                8

information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

Defendant's Initials _Jm_          9

10.   Removal - Notification

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States.  Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.

**B.**   **Standard Terms and Conditions**

1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant

Defendant's Initials _____        10

to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.   Supervised Release

The defendant understands that the offense to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials _Jay_                  11

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant

Defendant's Initials _Jun_       12

promises that his financial statement and disclosures will be complete,

accurate and truthful and will include all assets in which he has any interest or

over which the defendant exercises control, directly or indirectly, including

those held by a spouse, dependent, nominee or other third party.  The

defendant further agrees to execute any documents requested by the United

States needed to obtain from any third parties any records of assets owned by

the defendant, directly or through a nominee, and, by the execution of this

Plea Agreement, consents to the release of the defendant's tax returns for the

previous five years.  The defendant similarly agrees and authorizes the United

States Attorney's Office to provide to, and obtain from, the United States

Probation Office, the financial affidavit, any of the defendant's federal, state,

and local tax returns, bank records and any other financial information

concerning the defendant, for the purpose of making any recommendations to

the Court and for collecting any assessments, fines, restitution, or forfeiture

ordered by the Court.  The defendant expressly authorizes the United States

Attorney's Office to obtain current credit reports in order to evaluate the

defendant's ability to satisfy any financial obligation imposed by the Court.

     6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to

nor bound by this agreement.  The Court may accept or reject the agreement,

Defendant's Initials _JM_       13

or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

      7.   <u>Defendant's Waiver of Right to Appeal the Sentence</u>

      The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground

Defendant's Initials ⟋⁄𝓂          14

that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

      8.   <u>Middle District of Florida Agreement</u>

      It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

      9.   <u>Filing of Agreement</u>

      This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

Defendant's Initials   <u> JM </u>      15

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant

Defendant's Initials ____*JM*____            16

pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____            17

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___13___ day of December, 2023.

ROGER B. HANDBERG
United States Attorney

_____                      _____
JAMES MOYE                                Rachel S. Lyons
Defendant                                 Assistant United States Attorney

_____                      _____
Joshua Lukman                             Chauncey A. Bratt
Attorney for Defendant                    Assistant United States Attorney
                                          Deputy Chief, Orlando Division

Defendant's Initials ___JM___              18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 6:23-cr- 239-RBD-LHP

JAMES MOYE

PERSONALIZATION OF ELEMENTS

Count One:

> First:    Was the mail matter described in the Information in the United States mail, in a mail route, with a letter or mail carrier, or in an authorized depository for mail matter?

> Second:   Did you knowingly steal the mail?

Defendant's Initials ___JM___                    19

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:23-cr- 239-RBD-LHP

JAMES MOYE

### FACTUAL BASIS

On May 5, 9, and 28, 2022, the Defendant, James Moye, aided and abetted by Jonathon Serrano, broke into three United States Postal Service ("USPS") mail trucks and stole mail that had yet to be delivered.

*Details of the first break-in and theft*

On May 5, 2022, the United States Postal Inspection Service ("USPIS") was notified that a USPS mail truck had been broken into at an apartment complex located on Cinderlane Parkway in Orlando, FL. The mail carrier was inside the apartments delivering mail at the time of the break-in. When the carrier came outside to the mail truck, he discovered someone had broken its front right-side window and stolen the mail that had yet to be delivered on his mail route. The following photograph depicts the mail truck after the break-in.

Defendant's Initials _____        20



Upon review of video surveillance from the apartment complex, agents identified two suspects, one driver and one occupant, in blue Dodge Avenger. The Avenger drove into and out of the apartment complex a few different times, as early as approximately 4:04 pm. At approximately 4:43 pm, the driver backed in next to the mail truck. The passenger got out, broke the window, and stole the mail. The following pictures depict the incident.

Defendant's Initials ___JM___          21



*(Picture 1)*



*(Picture 2)* In picture 2, the passenger is standing next to the mail truck.



*(Picture 3)* In picture 3, the passenger is leaning into the mail truck after breaking the glass.



*(Picture 4)* In pictures 4 and 5, the passenger is holding mail trays which contain mail yet to be delivered.

Defendant's Initials _____                23



*(Picture 5)*

*Details of the second break-in and theft*

On May 9, 2022, the USPIS was notified that a USPS mail truck had been broken into on Shady Lane Drive, Orlando, FL. The street is in a residential neighborhood. It is approximately four miles away from the first break-in on May 5, 2022. The mail carrier was on his walking route delivering the mail at the time of the break-in. When the carrier came back to the mail truck, he discovered someone had broken the front left-side window and stolen the mail that had yet to be delivered on his mail route. The following picture depicts the mail truck after the break-in.

Defendant's Initials ___Jay___       24



A neighborhood canvas was conducted to identify any witnesses or homes with surveillance video. A homeowner who lives close by to where the break-in occurred provided video. The video depicts a blue Dodge Avenger drive towards where the mail truck was parked at approximately 5:10 pm.



*Details of the third break-in and theft*

On May 28, 2022, the USPIS was notified that a United States Postal USPS mail truck had been broken into on Teakwood Drive, Orlando, FL. The street is in a residential neighborhood. It is approximately five miles away

Defendant's Initials _____        25

from the first break-in on May 5, 2022, and approximately six miles away

from the second break-in on May 9, 2022. The mail carrier was on his walking

route delivering the mail at the time of the break-in. When the carrier came

back to the mail truck at approximately 12:40 pm, he discovered someone had

broken the front left-side window and stolen the mail that had yet to be

delivered on his mail route. The following picture depicts the mail truck after

the break-in.



A neighborhood canvass was conducted to identify any witnesses or

homes with surveillance video. A homeowner who lives close by to where the

break-in occurred provided video. The video depicts a grey Honda Accord

drive towards where the mail truck was parked at approximately 12:31 pm and

12:34 pm. The camera is no more than three houses down from where the

break-in occurred. At approximately 12:29 pm, the car drives up and parks in

Defendant's Initials _JM_                     26

view of the camera and stays parked for approximately two minutes. The occupants would have been able to see the mail truck clearly from this position. The mail carrier can be seen in the video walking in the other direction and eventually he is out of view from where the mail truck is parked.



*Identification of the Subject Vehicles*

With the assistance of the Orlando Police Department and the Orange County Sheriff's Office, agents were able to identify the Dodge Avenger used during the first two thefts. On May 12, 2022, agents observed the vehicle parked in front of an apartment building on Orange Blossom Trail, Orlando, FL ("Orlando Residence"). The address is approximately 1 mile from where the first break-in occurred.

The Dodge Avenger is registered to C.C. The address on C.C.'s Florida driver's license is XXXX E Orange Avenue, Eustis, FL ("Eustis Residence"). C.C. had recently received mail at the Eustis Residence. A review of her

Defendant's Initials ____Jr____          27

Facebook profile revealed she is currently in a relationship with Jonathan Serrano ("Serrano"). Moye also recently received mail at the Eustis Residence.

Agents were able to obtain video showing the apartment complex at which the Orlando Residence is located near the times of the break-ins. This video showed the Honda Accord used during the third theft present at that apartment complex. The Honda Accord is registered to an individual who is the father of an individual with whom Moye shares children.

Serrano and Moye have known each other for many years and have been together in multiple incidents which yielded police reports. The following are the dates and police departments associated with the reports.

- February 26, 2022 – Jefferson County, FL Sheriff's Office

- August 31, 2016 – Polk County, FL Sheriff's Office

- December 31, 2015 – Orlando, FL Police Department

- September 14, 2015 – Gainesville, FL Police Department

On May 5, 2022, and May 9, 2022, agents observed video of the Dodge Avenger at the apartment complex for the Orlando Residence, and on May 28, 2022, they observed video of the Honda Accord at the apartment complex for the Orlando Residence. The first and second pictures below depict a person who appears to be Moye getting into the driver's side and another person who appears to be Serrano getting into the passenger side of the Dodge Avenger at

Defendant's Initials _____        28

approximately 3:52 pm on May 5, 2022. At approximately 4:07 pm, the

Dodge Avenger returned to the residence. A person who appeared to be

Serrano can be seen jumping out in a hurry towards the apartment. He quickly

comes back to the Dodge Avenger and they leave the apartment complex for

the Orlando Residence again. The second and third pictures below depicts a

person who appears to be Serrano.







Video surveillance shows that on May 5, 2022, at approximately 4:03 pm, the Dodge Avenger was seen at the site of the first break-in. It leaves approximately 30 seconds later. The vehicle then comes back to the same site at approximately 4:16 pm. It eventually leaves again approximately two minutes later and returns at approximately 4:42 pm, right before the break-in of the USPS mail truck. The location of the break-in is approximately 1 mile away from the Orlando Residence.

The tag was captured for the Dodge Avenger when it came through the front entrance to the apartment complex for the Orlando residence on May 5, 2022, at approximately 4:06 pm.

On May 9, 2022, the Dodge Avenger was seen on video at approximately 5:01 pm pulling up close to the apartment building for the Orlando Residence. Two children get out of the rear of the car and shortly after that the car departs. The site of the second break-in is approximately 4 miles from the Orlando Residence, directly down Orange Blossom Trail.

Defendant's Initials _JM_                    30

The tag was captured again when it came through the front entrance to the apartment complex for the Orlando Residence on May 9, 2022 at approximately 5:00 pm. It left the front area of the complex at approximately 5:03 pm that day. The second break-in then occurred at approximately 5:10 pm.

On May 18, 2022, a Detective with the Orlando Police Department, assisting in this investigation, drove by the Eustis Residence. He observed the car parked at the Eustis Residence and a person who appeared to be Serrano standing next to it.

On May 28, 2022, the Honda Accord was seen on video returning to the apartment complex for the Orlando Residence at approximately 1:18 pm, *i.e.* approximately 30 minutes following the third break-in. The Orlando Residence is approximately 6.5 miles from the site of the third break-in. As depicted in the picture below, video surveillance from the apartment complex captured a USPS mail tray in the front window of the Honda Accord when it returned to the apartment complex.

Defendant's Initials _____     31



On May 28, 2022, at approximately 1:22 pm, two subjects who appear to be Serrano, then Moye, can be seen walking from the Honda Accord and towards the Orlando Residence.

The tag was captured when it came through the front entrance to the apartment complex on May 28, 2022, at approximately 1:18 pm.

*James Moye Interview*

On February 21, 2023, James Moye was interviewed by U.S. Postal Inspectors. He told them that he lived at Orlando Residence with C.C. and Jonathon Serrano during the relevant time frame. According to Moye, Serrano told Moye he needed a ride somewhere and that he would kick him and his kids out of the apartment if he did not agree. Moye agreed to drive him to an apartment complex close by. While there, Serrano jumped out of the car Moye was driving and broke into the mail truck and stole the mail. Moye was driving C.C.'s blue Dodge Avenger. Moye said he did not know what Serrano used to break into the vehicle.

Defendant's Initials           32

Moye admitted to helping Serrano steal mail on two additional occasions. He confirmed the vehicles he was driving. Moye claimed he did not receive anything of value in exchange for helping Serrano.